RUSSELL GEASLEN *et al.*, Plaintiffs-Appellants, v. BERKSON, GOROV AND LEVIN, LTD., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—89—2026

Opinion filed September 30, 1991.—Rehearing denied November 19, 1991.

Miller, Forest & Downing, Ltd., of Glenview (Robert J. Downing, Marc H. Heisler, and Marsha V. Phillips, of counsel), for appellants.

Haskell & Perrin, of Chicago (John J. Lynch and Daniel G. Jordan, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

This action was brought to recover damages occasioned by the alleged negligence and breach of fiduciary duty by the defendant attorneys in issuing their letter of opinion to plaintiffs. The trial court granted, with prejudice, defendants' motion to dismiss, under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), for failure to state a cause of action. This appeal is taken from that dismissal. For the reasons stated below, we affirm.

Plaintiffs, Russell Geaslen, Hazel Geaslen, Richard Geaslen, Scott Geaslen, and Sandra Geaslen, individually and as custodian for Richard L. Geaslen and Tracy Geaslen, minors, were the owners of all the shares of stock in Triad Sales Corporation (Triad). Defendant Howard Levin is an attorney and a partner in the defendant law firm of Berkson, Gorov, and Levin, Ltd.

For several months preceding August 16, 1985, plaintiffs negotiated with Burton L. Stern for the purchase from plaintiffs of all the capital stock of Triad. Stern was acting on his own behalf and on behalf of an entity known as Nationwide Trust. Defendants acted as attorneys for Stern and Nationwide in connection with the transaction.

Plaintiffs were represented by the law firm of Coffield, Ungaretti, Harris & Slavin.

Nationwide proposed to purchase all of Triad's capital stock from plaintiffs for an aggregate consideration of $1,750,020. The consideration was payable at closing on August 16, 1985, by delivery of a certified or cashier's check in the amount of $450,000 payable to plaintiffs, and by delivery of Nationwide's promissory notes in the amount of $1,300,020 payable to plaintiffs. To secure payment of these notes, Nationwide was to deliver to the plaintiffs a pledge agreement whereby the purchased stock was pledged as security for payment. The stock certificates, together with instruments of assignment, were also to be delivered to plaintiffs pursuant to the pledge agreement. Plaintiffs were also to be granted a first security interest in all of Triad's assets.

The purchase agreement between plaintiffs and Stern, which was drafted by plaintiffs' attorneys, required defendants to deliver to plaintiffs at closing an attorney's opinion letter "in form and substance reasonably satisfactory to Sellers and their counsel." The required contents of the letter were apparently set out in the purchase agreement negotiated by the parties. That agreement, however, was not included by plaintiffs in their complaint.

Pursuant thereto an opinion letter was delivered to plaintiffs in care of their attorneys at closing. This opinion letter reads as follows:

"The following is the opinion of the firm of Berkson, Gorov & Levin, Ltd., counsel for Nationwide Trust and is furnished to you pursuant to the Agreement of Sale as above identified and dated this 16 day of August, 1985.

1. Purchaser has full legal power and authority to enter into and perform this Agreement and the other agreements contemplated hereby;

2. Nationwide is a validly existing trust, Todd Stern is the validly appointed and presently acting sole Trustee of Nationwide and Todd Stern Trustee is empowered under the terms of the trust to execute this Agreement and the instruments and agreements contemplated hereby and purchase the Purchased Shares;

3. The Agreement and the other agreements contemplated thereby have been duly executed and delivered by and constitute valid and binding obligations of Purchaser and are enforceable in accordance with their terms, except to the extent that the enforcement thereof may be limited by any applicable bankruptcy, insolvency, reorganization, moratorium or similar law af-

fecting creditors' rights generally, whether now or hereafter in effect, provided that no opinion shall be expressed as to the specific remedy that any court, governmental authority or arbitrator may grant, impose or render; and the execution and delivery thereof by Purchaser, and the performance by Purchaser of its respective obligations thereunder do not and will not result in a breach or termination of or constitute a default under any indenture, agreement or other instrument, or any law, judgment, order, writ, injunction, ruling or decree of any jurisdiction, court or governmental body, to which either Purchaser is a party or by which it or any of its properties may be bound, and which is known to such counsel and;

4. Berkson, Gorov & Levin, Ltd., has no reason to believe that any representation or warranty of Purchaser contained in the Agreement is untrue or misleading in any material respect.

5. All terms used herein which are defined in the Agreement shall have the meanings herein as are ascribed to such terms in the Agreement."

The sale closed on August 16, 1985. $450,000 was paid to plaintiffs at closing, along with Nationwide's promissory notes of $1,300,020 payable to plaintiffs, along with pledge and security agreements. Nationwide subsequently defaulted on the notes, and Stern filed a petition for relief under the Bankruptcy Code. Later, it was also revealed that, prior to the closing, Stern had negotiated for a line of credit with Allegheny International Credit Corporation to finance the purchase, and had granted Allegheny a first security interest in Triad's assets in conflict with the prior security interest subsequently granted plaintiffs under the terms of the stock purchase transaction.

Plaintiffs filed a two-count complaint against defendants, alleging negligence in preparation of the opinion letter in count I and breach of fiduciary duty to plaintiffs in count II. In the first count, plaintiffs alleged that defendants had a duty to them "to exercise a reasonable degree of care and skill in their investigation of the matters which were the subject of the letter of opinion and in making the assertions and representations, and in giving the opinions, contained therein." The complaint alleged that defendants were negligent in that they "failed to perform or cause to be performed a proper investigation of the credit, legal and financial histories of Stern and Nationwide." According to the complaint, had defendants performed such investigation, they would have learned that Stern was "commercially and financially and morally unreliable and a poor credit risk" and would have had "reason to believe that the representations and warranties

of their clients in the stock purchase transaction were or may have been materially untrue or misleading." There are no allegations in the complaint, however, of any specific untrue or misleading representations by Stern. Nor are there any allegations that the opinion letter itself contains any misrepresentations by defendants. Nor were any such allegations made in proceedings before the trial court.

In the second count of the complaint, which incorporates the factual allegations of count I, plaintiffs allege that defendants owed them a fiduciary duty in respect to the investigations, disclosures and opinions made in connection with the letter, and that defendants breached that duty by failure to investigate and reveal Stern's negative legal, credit and financial history.

Defendants filed a motion to dismiss the complaint, asserting that count I failed to state a cause of action as the defendants owed no duty of care to the plaintiffs, but only to their own client. As to count II, defendants asserted that no fiduciary relationship existed between them and plaintiffs, and therefore no cause of action existed for breach of a fiduciary duty. The trial court granted defendants' motion, finding that count I failed to allege that defendants' primary purpose was to benefit the plaintiffs and therefore failed to state a cause of action. The court further found that no fiduciary relationship exists between an individual and the attorney for his opponent, and therefore dismissed the second count. Plaintiffs appeal from the dismissal.

OPINION

■■ As a general rule, an attorney owes a duty only to his client. (*National Savings Bank v. Ward* (1880), 100 U.S. 195, 25 L. Ed. 621.) However, in the course of the representation of a client, the attorney is often required to perform services for his client which also involve third parties. In such cases, the first question is whether a duty arises to such a third party, and if so, the question becomes one of reconciling the potentially conflicting duty to the client with any duty the attorney may owe to the third party.

■ ■ Both parties to this appeal rely on *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96, in which the Illinois Supreme Court considered the issue of an attorney's liability to a nonclient for negligence. The court there recognized that the attorney's paramount obligation and duty are to his client. (*Pelham*, 92 Ill. 2d at 20, 440 N.E.2d at 99.) It acknowledged, however, the trend in tort law to abolish privity of contract as a prerequisite to the establishment of a duty. " 'Thus, tort liability will henceforth be measured by the scope of the duty owed rather than the artificial concepts of privity.' " (*Pel-*

*ham*, 92 Ill. 2d at 20, 440 N.E.2d at 99, quoting *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 62, 250 N.E.2d 656, 660.) In the absence of contractual privity, an attorney's duty to someone other than a client will arise if

> "[plaintiffs can] allege and prove facts demonstrating that they are in the nature of third-party intended beneficiaries of the relationship between the client and the attorney \*\*\*. [Citations.] By this we mean that to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship. [Citation.]
>
> Analogizing the scope of the duty to the concept of a third-party direct beneficiary serves the purpose of limiting the scope of the duty owed by an attorney to nonclients. The key consideration is the attorney's acting at the direction of or on behalf of the client to benefit or influence a third party." *Pelham*, 92 Ill. 2d at 20-21, 440 N.E.2d at 99-100.

Plaintiffs in that case were the children of Loretta and George Ray; the defendant was an attorney who represented Loretta in her divorce action against George. The divorce decree required George to maintain his children as beneficiaries on his life insurance policies which he carried through his employer. George remarried and named his second wife as beneficiary on the policies. After George's death, the children sued their mother's attorney, alleging that he was negligent in failing to notify George's employer of the divorce decree provision requiring that the children be the beneficiaries of the policies. (*Pelham*, 92 Ill. 2d at 16-17, 440 N.E.2d at 97.) The court concluded that under the facts of the case, the defendant owed no duty to the children. The children were not in the nature of third-party intended beneficiaries. The attorney was hired for the primary purpose of obtaining a divorce for his client, not for the primary purpose of benefiting her children. *Pelham*, 92 Ill. 2d at 23, 440 N.E.2d at 100-01.

■ Here, there is no question that the primary purpose of the relationship between defendants and Stern was to protect Stern's interests and not to benefit plaintiffs. However, when defendants, at Stern's direction, issued their opinion letter to plaintiffs, there can be little doubt that the letter was intended to benefit plaintiffs and influence their decision by assuring them of the matters set forth in the letter, and thereby help persuade plaintiffs to sell their stock to Nationwide. In such circumstances it is not far reaching to acknowledge that defendants assumed a duty of care towards plaintiffs with re-

spect to the accuracy of matters expressed in the letter. This result would be consistent with the law as set forth in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, and *Glanzer v. Shepard* (1922), 233 N.Y. 236, 135 N.E. 275. Both cases found that a professional (a surveyor in *Rozny* and a public weigher in *Glanzer*) who performs a service for his client which foreseeably affects a third party owes a duty of care to that third party. See also *Brumley v. Touche, Ross & Co.* (1985), 139 Ill. App. 3d 831, 487 N.E.2d 641 (certified public accountant).

The *Pelham* court recognized the possibility that such a duty of care may arise when it said "[w]e believe a different situation would confront us if this complaint had alleged sufficient facts to show that the defendant had undertaken a duty to notify the insurance company or the husband's employer of the provision in the divorce decree. In that situation, the attorney may have a duty to exercise reasonable care because his client and the plaintiffs herein could have justifiably relied on that undertaking." *Pelham*, 92 Ill. 2d at 24, 440 N.E.2d at 101. See generally Note, *Attorneys' Negligence & Third Parties*, 57 N.Y.U. L. Rev. 126 (1982) (when an attorney or other professional undertakes some action and that undertaking foreseeably affects foreseeable third parties, the attorney assumes a duty to exercise due care in that undertaking). See also Fuld, *Lawyers' Standards & Responsibilities in Rendering Opinions*, 33 Bus. Law. 1295, 1309 (1978) ("if the lawyer addresse[d] his opinion to a third party, he ha[d] duties to the third party").

Although we agree with plaintiffs that defendants, by undertaking to render the letter of opinion, owed plaintiffs a duty of care, we disagree on the scope of that duty. Plaintiffs urge that defendants' duty was to investigate their client's financial, legal and credit background and to reveal those results to plaintiffs. However, there is nothing in the record before us which would indicate that defendants were required under the agreement between the parties to render an opinion as to Stern's creditworthiness or his general credibility beyond the scope of the warranties and representations made in the purchase agreement. To find that defendants had a duty to investigate matters or reveal information about their client beyond the scope of what they were required to do in their letter may well conflict with their duty to their own client of undivided loyalty and confidentiality. (See Fuld, *Lawyers' Standards & Responsibilities in Rendering Opinions*, 33 Bus. Law. 1295, 1309 (1978) ("a third-party recipient is usually represented by his own lawyer, *** and the opining lawyer's duties are therefore merely to give his careful opinion on the matters re-

quested").) Defendants' only duty here was a duty of care as to the matters requested in the agreement and expressed in the opinion letter.

■ Where a complaint alleges that an attorney at the request of his client has made a misrepresentation, either negligently or intentionally, in an opinion letter directed to a third party, the trend has been to hold the attorney liable for injuries caused by that misrepresentation. (See, *e.g., First Financial Savings & Loan Association v. Title Insurance Co.* (N.D. Ga. 1982), 557 F. Supp. 654; *Bradford Securities Processing Services, Inc. v. Plaza Bank & Trust* (Okla. 1982), 653 P.2d 188; *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976), 57 Cal. App. 3d 104, 128 Cal. Rptr. 901. See generally Treece & Hall, *Attorney's Liability: Negligent Misrepresentations to Third Parties— A Growing Threat*, 31 DRI for the Defense 18 (July 1989).) Since the opinion letter was prepared pursuant to the client's request, there is a lesser concern with the possibility that an acknowledgement of a duty of care to the third party will engender a conflict with the interests of the client. The facts in *Greycas, Inc. v. Proud* (7th Cir. 1987), 826 F.2d 1560, are consistent with this proposition. Applying *Pelham,* the court found that a duty of care existed to a nonclient when an attorney issued his opinion letter to a nonclient. There, Crawford, Proud's brother-in-law, sought a loan from the plaintiff. As a condition to the loan, Crawford was required to furnish a letter from counsel stating that there were no prior liens on the machinery which was to secure the loan. Crawford asked Proud to prepare the letter, which Proud did, stating "I have conducted a U.C.C., tax, and judgment search with respect to the Company *** and *** all units *** are free and clear of all liens or encumbrances ***." (*Greycas,* 826 F.2d at 1562.) After Crawford defaulted, it was discovered that the machinery was subject to other earlier liens, and that Proud had not in fact conducted any search for prior liens. In addition, Proud failed to reveal to the plaintiff his relationship to Crawford. Relying on *Pelham,* the court found that "Crawford hired Proud not only for the primary purpose, but for the sole purpose, of influencing Greycas to make Crawford a loan." (*Greycas,* 826 F.2d at 1563.) The duty which Proud owed to Greycas was "a duty to use due care to see that the information was correct," and Proud breached that duty by stating that he had performed a search for liens and encumbrances when he had not done so. *Greycas,* 826 F.2d at 1565. See also *Crossland Savings FSB v. Rockwood Insurance Co.* (S.D.N.Y. 1988), 700 F. Supp. 1274 (attorney liable to nonclient for misrepresentation in opinion letter that limited

partners had made paid-in investments to the partnership when in fact no payments had been made).

This, however, is not an action for negligent misrepresentation as was the case in *Greycas* and *Crossland Savings*. There are no allegations in the complaint that any information in the letter of opinion itself was incorrect. No allegations have been made by plaintiffs that paragraph 1 regarding the legal power and authority of the purchaser to enter into and perform the agreement is in any way a misrepresentation. Nor have any such allegations been made in regard to paragraph 2, concerning the validity of Nationwide Trust and Stern's authority as trustee to execute the agreement. Similarly, plaintiffs have not alleged that defendants' representations in paragraph 3 relating to the validity and enforceability of the agreement are false.

Plaintiffs do, however, allege that if defendants had made the investigation which plaintiffs urge they were under a duty to do, defendants would have had "reason to believe that the representations and warranties of their clients in the stock purchase transaction were or may have been materially untrue or misleading," the implication being that the fourth paragraph of the opinion letter is therefore a misrepresentation. However, there is nothing in the record indicating what representations or warranties were made by defendants' clients, nor are there any allegations that any of those representations or warranties were materially untrue or misleading. Defendants' opinion letter does not vouch for the general credibility or creditworthiness of their client, but rather deals with the reliability of the generally described, yet undisclosed, representations and warranties of the client. Moreover, in response to a specific question by the trial court about paragraph 4, plaintiffs' counsel admitted that no misrepresentation was alleged. Although plaintiffs, in their brief before this court, contend that if allowed to proceed with the case they will be able to prove that portions of the letter of opinion were untrue, no such allegations were made in the complaint or, for that matter, at any time in the trial court and cannot be made for the first time on appeal. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.

■ Thus, although defendants had a duty to act with care in writing the opinion letter, that duty did not extend to the investigation and disclosure of matters beyond the scope of the letter. As previously noted, the nature of the attorney-client relationship and the attorney's duty to represent his client zealously and to protect his client's confidences dictate that any duty of the attorney to a nonclient whose interests are adverse to those of the client must be carefully delineated. To find that defendants here had a duty to investigate

their client's background and to reveal the results to his adversary would require the defendants to divide their loyalty between their client and the adversary, and conceivably to reveal confidential information which they are ethically prohibited from revealing. We note that the *Pelham* court was careful to limit that duty so as to mitigate the likelihood of creating a conflict between the duty of an attorney to his own client and his duty to third parties with whom his client is engaged in an arm's-length transaction. "Where a client's interest is involved in a proceeding that is adversarial in nature, the existence of a duty of the attorney to another person would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client." *Pelham*, 92 Ill. 2d at 23, 440 N.E.2d at 100.

Notwithstanding the allegations here concerning defendants' client Stern's "strongly negative legal, credit, financial and commercial history," no one has alleged or contended that defendants engaged in any illegal conduct or conspiracies with their client to injure the plaintiffs. Had that been the case, the fact that plaintiffs are nonclients would not insulate the defendant attorneys from liability for their intentional tortious acts. Our code of professional responsibility demands that an attorney represent his client zealously within the bounds of the law. "One may not use his license to practice law as a shield to protect himself from the consequences of his participation in an unlawful or illegal conspiracy." *Celano v. Frederick* (1964), 54 Ill. App. 2d 393, 400, 203 N.E.2d 774. See generally 7 Am. Jur. 2d *Attorneys at Law* §232, at 274 (1980).

In this case, absent any factual allegations that defendants were requested or undertook to investigate their client's legal, financial and credit background and to reveal the results of that investigation to plaintiffs, or any allegations that the representations which defendants were required to and did make in their letter of opinion were false, we find that plaintiffs' complaint has failed to state a cause of action in negligence.

The fact that an attorney who, at the request of his client, undertakes to prepare an opinion letter for a third party assumes a duty of care to that third party in regard to the matters expressed in that letter does not, however, make the attorney the third party's attorney for all purposes, nor, *a fortiori*, does it make the attorney a fiduciary of the third party. In a case very similar to the one before us, the question of an attorney's fiduciary duty to a nonclient was considered. (*Gold v. Vasileff* (1987), 160 Ill. App. 3d 125, 513 N.E.2d 446.) The defendant attorney there represented the sellers in the sale of a busi-

ness. Plaintiff buyers sued the attorney for breach of fiduciary duty when his client failed to conclude the sale, contending that they reposed great trust and confidence in their opponents' attorney and the attorney's representation that the sellers would comply with the terms of the sale. In affirming the dismissal of plaintiffs' complaint, the court found that the attorney's duty to zealously represent his client with undivided loyalty precluded any duty towards the client's adversary. "Defendant owed no fiduciary duties to the buyers, and if the buyers reposed trust and confidence in defendant, it was unreasonably placed and could not be the basis for an equitable type of action founded on breach of a fiduciary or confidential relationship. *** In short, the attorney can have no fiduciary duties to third parties." *Gold*, 160 Ill. App. 3d at 127-28, 513 N.E.2d at 448.

Plaintiffs cite *Crossland Savings FSB v. Rockwood Insurance Co.* (S.D.N.Y. 1988), 700 F. Supp. 1274, 1282, where the court said "[w]hen a lawyer at the direction of her client prepares an opinion letter which is addressed to the third party or which expressly invites the third party's reliance she engages in a form of limited representation." This representation, plaintiffs urge, created a fiduciary relationship between them and defendants. However, as discussed above, defendants' "representation" of plaintiffs here was limited to the issuance of the opinion letter, and the duty of care extended only to the matters expressed in that letter.

The other case cited here by plaintiffs is similarly unpersuasive. *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976), 57 Cal. App. 3d 104, 128 Cal. Rptr. 901, applied California's balancing test to find that an attorney had a duty to reveal to a nonclient his doubts about the subject of his opinion letter, and could be liable for negligence when harm to the nonclient was forseeable. Our supreme court, however, rejected the broad scope of the California balancing approach to an attorney's duty to a third party, stating "[t]he analogy to third-party direct beneficiaries to determine the duty owed to a nonclient by an attorney in a negligence action provides for a broader scope of liability than privity, but a narrower scope of liability than the balancing approach used in California." *Pelham*, 92 Ill. 2d at 21-22, 440 N.E.2d at 99.

Accordingly, for the reasons stated above, we affirm the trial court's dismissal of this complaint.

Affirmed.

LORENZ, P.J., and McNULTY, J., concur.