In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 16-1122

FIRST AMERICAN BANK,

*Plaintiff-Appellant,*

*v.*

FEDERAL RESERVE BANK OF ATLANTA, CITIZENS BANK, N.A., and DAVID M. GOODSON,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 8120 — **John Robert Blakey**, *Judge.*

---

ARGUED OCTOBER 20, 2016 — DECIDED NOVEMBER 22, 2016

---

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* This is a complicated case regarding contested liability for a counterfeit check; we shall simplify ruthlessly.

In 2013 an Illinois lawyer named David M. Goodson received an email from a person who represented himself or herself to be a woman named "Fumiko Anderson." The

email stated that she wanted to hire Goodson to help her re-cover money that she claimed to be owed in a divorce pro-ceeding. Later Fumiko told him that her retaining a lawyer had convinced her ex-husband to settle, and that Goodson should expect a substantial check in the mail to cover his fee plus the amount of the settlement, which he was to pass on to her. The check that Goodson received, marked payable to the order of "Law Office David M. Goodson," was drawn on the account of First Aid Corporation (an Illinois manufactur-er—doing business as 1ˢᵗ Ayd Corporation—of industrial and sanitation products), at a Chicago bank named First American. The check looked like a real check but actually was counterfeit. The scammers wrote a check on First Amer-ican for $486,750.33 to Goodson, which he deposited in his client trust account in Citizens Bank, N.A., one of the de-fendants in this case. Fumiko told Goodson she needed the money immediately. Goodson directed the bank to transfer it to a Japanese entity that he believed to be Fumiko but ac-tually was part of an Internet-based fraudulent check scheme known as the "Fumiko Bandit." So First Aid had lost the entire $486,750.33 that had been transferred out of its ac-count by the fraudulent check; the money had been stolen by Fumiko Bandit.

First American reimbursed First Aid, its defrauded and therefore unhappy client, but then turned to Citizens Bank in an effort to recover from it the money that it had transmitted to Goodson's Citizens Bank account. Citizens refused, pre-cipitating this suit by First American, which seeks back the $486,750.33 it has lost and names as defendants not only Goodson and Citizens Bank but also the Federal Reserve Bank of Atlanta, which as we're about to see was involved in the transaction, though only peripherally.

The money had been on account at First American Bank and had been stolen by a fraudulent check, so the bank recredited its customer and brought this suit seeking to be reimbursed by the individual (Goodson) and the two banks (Citizens and the Atlanta Federal Reserve Bank) for its loss. See Illinois Uniform Commercial Code, 810 ILCS 5/4-407. The district court gave judgment for all three defendants, however, and First American appeals, urging several grounds for reversal. The first is breach of warranty. When Citizens deposited the $486,750.33 in Goodson's account, it did so by an electronic rather than paper check (more precisely an electronic image of the paper check) and the electronic check passed through the Federal Reserve Bank of Atlanta en route to First American. The Federal Reserve Board's Regulation J, 12 C.F.R. § 210.6(b)(3)(i)(A), provides that when a Federal Reserve Bank presents an electronic check (such as the check drawn on First American) for payment, "the electronic image … [must] accurately represent[] all of the information on the front and back of the original check as of the time that the original check was truncated." By "truncated" is just meant that an electronic image is substituted for the original paper check.

Some information that was on the original check was missing from the electronic version, but unavoidably so because it was information consisting of "characteristics of the check, such as watermarks, microprinting, or other physical security features that cannot survive the imaging process," and their absence from the electronic image, being inevitable, was not actionable. See Regulation CC, 12 C.F.R. Part 229, App. E, § 229.51(A)(3). Among the missing information was a warning box on the back of the check, often designed

to resist scanning and so considered by the industry to be a security feature as well.

Had First American been suspicious of the electronic image that it received from the Federal Reserve Bank of Atlanta, it could have demanded a "substitute check," which is a paper printout that—to facilitate electronic transactions—is deemed the legal equivalent of the original paper check. This would have protected First American, because a "bank that transfers, presents, or returns a substitute check or a paper or electronic representation of a substitute check for which it receives consideration shall indemnify the recipient and any subsequent recipient (including a collecting or returning bank, the depositary bank, the drawer, the drawee, the payee, the depositor, and any indorser) for any loss incurred by any recipient of a substitute check if that loss occurred due to the receipt of a substitute check instead of the original check." 12 C.F.R. § 229.53(a). Or it could have refused to honor the check.

First American didn't seek indemnity and hasn't shown that information on the original check that was omitted from the electronic image would, had it appeared on the electronic image, have aroused suspicions in First American that would have caused it to refuse to send the $486,750.33 to Goodson's bank.

But we have now to consider some alternative arguments by First American for reversal, one being a claim against Goodson, Citizens Bank, and the Federal Reserve Bank of Atlanta—the bank through which the money passed en route to the Japanese fraudsters—for "restitution by mistake," pursuant to the Illinois Uniform Commercial Code, 810 ILCS 5/3-418. First American was the victim of a mistake,

all right, but Illinois law provides no remedy for such a victim against "a person who took the instrument in good faith and for value." 810 ILCS 5/3-418(c). The lawyer and the two banks reasonably believed that they were engaged in the innocent, commonplace banking activity of forwarding a check to its intended final recipient on behalf of their clients. There is no claim or evidence that they knew they were siphoning money to criminals. Nor did they fall below "reasonable commercial standards of fair dealing." 810 ILCS 5/3-103(a)(4) and comment 4. Another claim by First American is "negligent spoliation of evidence" in violation of Illinois common law, the spoliation being alleged to be Citizens Bank's destruction of the original paper check after the bank made the electronic copy that it transmitted to the Federal Reserve Bank of Atlanta en route to the disappearance of the money in Japan. There is no duty to retain paper checks after an electronic substitute has been made—otherwise banks would drown in paper—provided there's a record of the contents of the paper check, as there is of course in this case; we know what the electronic check omitted, and knowing that, we know the information that the original, the paper check, contained.

Last is First American's claim against lawyer Goodson for professional negligence. But he had received the $486,750.33 check from First Aid believing it was part or all of the money that his client, Fumiko Anderson, had asked him to recover for her. The fact that the check came from Canada, from a company he didn't recognize, rather than from an individual (Fumiko's ex-husband), may have been suspicious circumstances, but maybe not, and in any event "the traditional, general rule has been that the attorney is liable only to his client, not to third persons. … To establish a

duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship." *Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. 1982). First American, the plaintiff, was not a client of Goodson.

There are some other, minor issues, but we can rely on the district court's resolution of them. There is no merit to the suit, which that court therefore rightfully dismissed.

AFFIRMED