In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 17-2040

JOHN DOE,

*Plaintiff-Appellant,*

*v.*

KIRSTJEN M. NIELSEN, Secretary of the
U.S. Department of Homeland Security;
JAMES W. MCCAMENT, Deputy Director,
U.S. Citizenship and Immigration
Services; and NICHOLAS COLUCCI, Chief,
Immigrant Investor Program Office,
U.S. Citizenship and Immigration Services,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 15-cv-01387 — **John Z. Lee**, *Judge.*

---

FEBRUARY 26, 2018

---

Before RIPPLE, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Plaintiff John Doe seeks lawful permanent residence in the United States under the

Employment-Based Immigration: Fifth Preference category
("EB-5"). This visa program requires applicants to demon-
strate that they have invested or are currently investing
capital in a "new commercial enterprise" within the United
States. 8 U.S.C. § 1153(b)(5)(A). To that end, Doe invested
$500,000 in Elgin Assisted Living EB-5 Fund, LLC. That
entity then loaned funds to Elgin Memory Care, LLC, so it
could build and operate a memory care facility in Elgin,
Illinois.

Despite this investment, the U.S. Citizenship and Immi-
gration Services ("USCIS") denied Doe lawful permanent
resident status. The USCIS expressed particular concern that
the Elgin memory care center had not been built since it was
first proposed in 2011. Doe objected to the decision and filed
a lawsuit against the USCIS alleging that the denial of his
application violated the Administrative Procedure Act.
5 U.S.C. §§ 701 *et seq.* The district court entered summary
judgment in the government's favor and Doe appealed.

Doe is represented in this appeal by the Kameli Law
Group, LLC. The law firm has three attorneys. John R. Floss
is one of two associates and also Doe's counsel of record.
Taher Kameli is the firm's principal. TAHER KAMELI LAW
GROUP, *Our Attorneys*, http://www.kamelilawgroup.com/
our-attorneys/ (last visited Feb. 14, 2018). Illinois records list
Kameli as the sole manager of the LLC. OFFICE OF THE ILL.
SEC'Y OF STATE, http://www.ilsos.gov/corporatellc/.

While briefing in this appeal was underway, the Securi-
ties and Exchange Commission brought a civil action against
Kameli for violating the Securities and Exchange Acts.
Complaint, *SEC v. Kameli*, No. 17-cv-04686 (N.D. Ill. June 22,
2017). The agency filed an amended complaint late last

month. First Amended Complaint, *Kameli*, No. 17-cv-04686 (N.D. Ill. Jan. 29, 2018). The SEC accuses Kameli of defrauding at least 226 immigrant investors who participated in the EB-5 immigrant investor program. *Id.* ¶¶ 1–2. More specifically, the SEC alleges that Kameli solicited over $88 million to invest in a number of new commercial enterprises, only to squander and misappropriate some of those funds. *Id.* ¶¶ 9–11.

There is significant overlap between the SEC's claims against Kameli and the facts in this case. Kameli is alleged to have misappropriated funds that were invested in the Elgin memory care center. *Id.* ¶¶ 159–167, 169. This supposedly left the project in debt and unfinished. *Id.* ¶¶ 195–96, 200–01. The SEC alleges that Kameli's actions have "jeopardized investors' chances at obtaining permanent U.S. residency through the EB-5 visa program." *Id.* ¶ 13. Doe is one of those investors. This raises a serious question of conflict of interest.

Accordingly, we ordered the parties to submit supplemental briefs regarding the possible conflicts of interest the Kameli Law Group may have in representing Doe. The briefs are now in. We conclude that disqualification is appropriate.

It is our duty to "maintain public confidence in the legal profession and assist[] in protecting the integrity of the judicial proceeding." *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). Disqualifying conflicted counsel is "a drastic measure" toward this end, but we must take this step when necessary to "protect[] the attorney-client relationship." *Id.* The facts of this case force our hand.

The Illinois Rules of Professional Conduct prohibit representation if "there is a significant risk that the representation

of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." ILL. R. PROF'L CONDUCT R. 1.7(a)(2). Client consent can sometimes resolve such a conflict, but it is not a panacea. *See Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). The lawyer must always "reasonably believe[] that [he] will be able to provide competent and diligent representation to each affected client." ILL. R. PROF'L CONDUCT R. 1.7(b)(1). Put slightly differently, representation is prohibited notwithstanding informed client consent if the court "cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation." *Id.* cmt. [15].

This case presents at least two concurrent conflicts of interest, neither of which can be waived by informed client consent.[1] No lawyer could reasonably continue the representation under these circumstances.

First, a conflict of interest arises when an attorney has an incentive to reject lines of inquiry or argument that might help his client's case. *See, e.g.*, *United States v. Algee*, 309 F.3d 1011, 1014 (7th Cir. 2002) (finding conflict when "ethical constraints would prohibit [counsel] from cross-examining [witnesses] in any meaningful way"); *People v. Taylor*, 930 N.E.2d 959, 971–72 (Ill. 2010) ("[T]he defendant must point to some specific defect in his counsel's strategy tactics, or decision making attributable to the conflict.") (internal

---

[1] In response to our order for supplemental briefing, the Kameli Law Group submitted an affidavit from Doe purporting to waive any conflict of interest. As we explain, the two conflicts at issue here are not waivable.

quotation marks omitted). Kameli has precisely this motivation. He and Doe might share an interest in proving that the Elgin investment was not a sham, but that is where their alliance begins and ends. Kameli would not advise Doe to litigate his case any other way, such as by alleging fraud and seeking reconsideration of the USCIS's decision. It therefore strains credulity to think that Kameli would be diligent in Doe's case. Indeed, a diligent lawyer must take "*whatever* lawful and ethical measures are required to vindicate a client's cause or endeavor." ILL. R. PROF'L CONDUCT R. 1.3 cmt. 1 (emphasis added). Kameli's self-interest inhibits him from carrying out this duty.

Second, a lawyer owes his client a duty of "undivided fidelity." *Pelham v. Griesheimer*, 440 N.E.2d 96, 100 (Ill. 1982). Having a duty to someone else obviously "interfere[s] with the undivided loyalty [that] the attorney owes his client" and ultimately "detract[s] from achieving the most advantageous position for his client." *Id.* Kameli's divided obligations to his various investors and clients put him in precisely this position. The SEC alleges that Kameli "has remained in total control" of the relevant EB-5 projects he created. First Amended Complaint, ¶ 12, *Kameli*, No. 17-cv-04686. Many of these projects evidently "lack money to complete construction," *id.* ¶ 196, meaning Kameli must decide which projects to shore up with the limited funds he has. His duty of loyalty to Doe would require him to complete the Elgin project because that would best position him to obtain lawful permanent residence. His obligations to his other investors, on the other hand, require him to invest in their respective enterprises. This catch-22 is the epitome of divided loyalty and thus makes Kameli's continued representation untenable.

Having identified the relevant conflicts of interest, we have the final issue of whether Kameli's conflicts can be imputed to his associate and Doe's counsel of record, John Floss. The Illinois rules provide that no lawyer associated in a firm "shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9." ILL. R. PROF'L CONDUCT R. 1.10(a). This language on its own would bar Floss from representing Doe. An exception arises, however, when "the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." *Id.* Kameli's conflict is plainly personal to him—he alone is in the SEC's crosshairs—so we must determine whether Kameli's civil case presents a significant risk of materially limiting Floss's continued representation of Doe.

We conclude that it does. As discussed, the Kameli Law Group is a small law firm with just three attorneys. Kameli is the only principal, so Floss reports directly to him. This presents an unacceptably high risk of materially limiting Doe's representation. There is virtually no chance Floss would do anything to upset Kameli's case. In fact, Floss's briefing on the conflict-of-interest issue suggests that he would champion Kameli's cause. The brief goes out of its way to describe the allegations against Kameli as "salacious." It also lauds the district judge in the SEC's civil action for "denying the SEC's motion for a preliminary injunction" against Kameli. None of this is relevant to Doe's case, and unfortunately, it suggests that Floss's priority would be to protect Kameli.

It is therefore ORDERED that the Kameli Law Group is disqualified from representing Doe in this case. The appeal will be held in abeyance for 60 days to permit Doe to secure substitute counsel.