Bambi K. McGEE and Jammy McGee, Plaintiffs–Appellees,

v.

HYATT LEGAL SERVICES, INC., Defendant–Appellant.

No. 87CA0291.

Colorado Court of Appeals, Div. IV.

Oct. 11, 1990.

Rehearing Denied Nov. 15, 1990.

Certiorari Denied July 29, 1991.

George A. Johnson, P.C., George A. Johnson, Boulder, for plaintiffs-appellees.

White & Steele, P.C., R. Eric Peterson, John M. Palmeri, Denver, for defendant-appellant.

Opinion by Judge Reed.

Defendant, Hyatt Legal Services, Inc., appeals the judgments entered in favor of plaintiffs, Bambi McGee (Ms. McGee) and her daughter, Jammy McGee, upon their claims of legal malpractice. We reverse and remand with instructions.

This controversy arises out of legal services rendered to Ms. McGee by the Hyatt law firm during the initial eight months of her dissolution of marriage proceedings.

Plaintiffs charged that because of the negligence of the Hyatt firm and its attorneys, temporary custody orders were entered by the trial court which provided for *joint* legal custody, and for an even division with the father in the physical custody of the child of the marriage; that these orders were contrary to the wishes of McGee, who sought *sole* legal custody; and that they were adverse to the interests of both plaintiffs.

They further charged that, although Ms. McGee obtained new counsel before the permanent orders hearing, the pattern of custody and visitation established by the

temporary orders militated against any substantial modification of the custodial arrangement, compelling Ms. McGee to agree to permanent orders continuing, essentially, the terms of the temporary orders.

Viewed in a light most favorable to both plaintiffs, as the prevailing parties, the record establishes the following circumstances.

In November 1983, Ms. McGee hired Hyatt to represent her in a marriage dissolution action. At that time, under informal agreement, she shared with her husband the custody of their nine-month-old child. Ms. McGee was the primary caretaker, but her husband exercised extensive visitation rights ranging from one to two and one-half days and nights a week.

Each party, in their pleadings, sought sole custody of the child. However, after negotiations, the parties agreed orally that *temporary* orders could issue awarding legal custody of the child to the parties, jointly, with evenly divided physical custody.

The day before the scheduled temporary orders hearing in mid-January, 1989, Ms. McGee changed her mind and directed the Hyatt attorney assigned to her case, to seek sole custody. In response, he informed her that it was too late because an agreement for temporary joint custody had already been reached with the husband's attorney. He further counseled that the temporary orders would not be binding at the final orders hearing and that the trial court would grant temporary joint custody in any event.

Neither Ms. McGee nor her attorney appeared at the scheduled temporary orders hearing the next day. The hearing consisted of husband's attorney reading the oral agreement into the record and the court entering temporary orders based thereon.

Shortly thereafter, Ms. McGee urged her attorney to obtain sole custody because she was dissatisfied with the custodial orders and, as she explained to her attorney, the child was exhibiting physical and emotional distress because of the arrangement. At this time, a new Hyatt attorney had been assigned to the case who then obtained a court order for a custody evaluation by the Department of Social Services. Because of the time necessary to complete the evaluation, the permanent orders hearing was required to be continued until January of 1985.

Subsequently, another Hyatt attorney was assigned to Ms. McGee's case. However, he soon left Hyatt's employ to establish his own practice and took the file with him.

There being no further action on her case, Ms. McGee retained new counsel in September 1984. This attorney then moved for modification of the temporary orders to seek temporary sole custody of the child with restricted visitation in the father. The attorney also arranged for completion of the pending custody evaluation and procured other expert testimony in support of Ms. McGee's claim for sole legal custody and for restricted visitation in the father.

The departmental custody evaluation report was then filed in court. It opined that although the joint custody and divided physical custody arrangement had not been initially advisable, nevertheless, the child had adjusted to it and could be harmed by further change. The evaluator, therefore, recommended that the existing custodial arrangement continue unchanged for six months at which time it could be reevaluated.

Ms. McGee's new attorney counseled with her concerning the impact of this evaluation and recommendation upon the other potential evidence in the case coupled with the risk that sole custody of the child might be awarded to husband. Based thereon, Ms. McGee agreed in writing to joint legal custody and, essentially, evenly divided physical custody of their daughter. This stipulation was approved by the trial court and formed the basis of the permanent orders entered.

Thereafter, plaintiffs filed this action alleging malpractice on the part of the three Hyatt attorneys and negligence of the law firm in its failure to supervise them. The claims against the individual

defendants, for reasons not here pertinent, were dismissed by plaintiffs, and the case proceeded to trial against Hyatt alone.

The jury returned verdicts against Hyatt on both negligence claims asserted by plaintiffs. It found damages to Ms. McGee in the amount of $76,000 and to the child in the amount of $24,000. The jury found Ms. McGee 25% negligent and the trial court reduced these amounts to $57,000 and $18,000 respectively and entered judgments thereon.

## I.

■ Citing *Crowe v. Wheeler*, 165 Colo. 289, 439 P.2d 50 (1968) and *Barnes v. District Court*, 199 Colo. 310, 607 P.2d 1008 (1980), plaintiffs contend that this appeal should be dismissed as moot. They argue that the issues raised by Hyatt on appeal relate solely to the claims of imputed negligence but, because the jury also found Hyatt liable under the alternative theory of negligent supervision, any decision rendered by this court would have no practical, legal effect upon the existing controversy. We disagree.

The issues of duty, causation, and damages raised by Hyatt are common to both claims for relief. Therefore, they are also sufficient to place the judgment for negligent supervision before us. *See Kirkland v. Allen*, 678 P.2d 568 (Colo.App.1984).

## II.

Hyatt contends that the trial court erred in submitting the child's claim to the jury because there was insufficient evidence of a breach of any duty owed to her. We agree.

■ An attorney, while performing his obligations to his client, is liable to third parties only when his conduct is fraudulent or malicious. *Weigel v. Hardesty*, 37 Colo. App. 541, 549 P.2d 1335 (1976). Here, no evidence was presented to establish that Hyatt acted in a fraudulent or malicious manner. Thus, Hyatt's liability to the child, based upon a claim of negligence, depends upon her status as being within the attorney-client relationship. *See Mon-*

*tano v. Land Title Guarantee Co.*, 778 P.2d 328 (Colo.App.1989).

■ An attorney hired to represent a spouse in a dissolution proceeding does not *per se* represent the interests of the minor children of the marriage. *See Scholler v. Scholler*, 10 Ohio St.3d 98, 462 N.E.2d 158 (1984). This principle is particularly applicable to a custody proceeding.

■ Custody is to be determined by the trial court in accordance with the best interests of the child, and the wishes of the parents as to custody are only two factors in that determination. Section 14–10–124(1.5)(a), C.R.S. (1987 Repl.Vol. 6B)). If, as here, custody is contested by each parent seeking sole custody, then, since the best interests of the child may be contrary to the parent's wishes, the duty of counsel to exert his best ethical efforts on his client's behalf is inconsistent with any duty he might owe to the child.

Recognition of this principle is implicit in § 14–10–116, C.R.S. (1987 Repl.Vol. 6B), which permits the court on its own motion or the motion of either party to appoint an attorney to represent such minor child concerning custody, support, and visitation.

■ Here, there is no evidence of any relationship between the Hyatt attorneys and the child. All that existed was a client-attorney relationship between them and the mother. This, we conclude, is insufficient as a matter of law to impose a duty to the child as if she were a client. *See Scholler v. Scholler, supra*. Further, because the interests of Ms. McGee and the child in the custody proceeding were not necessarily identical, we reject the child's argument that she could rely upon the proper performance of Hyatt's duty to her mother as a beneficiary thereof.

Hence, we conclude that the trial court erred in denying Hyatt's motion for directed verdict of dismissal as to the child's claim.

## III.

Hyatt also contends that the trial court erred in submitting Ms. McGee's claim of

negligence to the jury because the custodial orders entered herein do not constitute a compensable loss. We agree.

Ms. McGee does not contend that the father of the child is not entitled to reasonable rights of visitation. Rather, she claims that, because of her attorneys' negligence, there was a wrongful interference in her parental relationship with her child in two particulars for which she was entitled to compensatory damages.

■ She argues that because she received, in temporary and permanent orders, only *joint* legal custody of the child, she is required to permit her ex-husband to share in all major decisions concerning the child's health, education, and general welfare. *See* § 14–10–123.5, C.R.S. (1987 Repl.Vol. 6B). Additionally, she contends that because of the specifics of the orders, physical custody of the child is shared with the father on an evenly divided basis. We agree with Hyatt that no compensable loss flowed from the order for joint custody.

Although Colorado courts have not dealt directly with this issue, other authorities have denied recovery under similar circumstances.

In *In re Marriage of Segal,* 179 Cal. App.3d 602, 224 Cal.Rptr. 591 (1986), the California Court of Appeals held invalid a mother's claim for monetary damages against her former husband for the loss of the society and affection of their child, arising out of an agreement and court order which granted custody to the father. The court held that public policy was opposed to an award of damages for loss of filial consortium where the claim involved only intangible injuries to the child-parent relationship for which monetary damages could not adequately compensate. The *Segal* court further determined that to permit such a claim would circumvent and undermine the statutory scheme which vests in the domestic relations court the authority to regulate and supervise the custody of minor children whose parents are involved in dissolution proceedings.

Similarly, relying in part upon the same underlying authority as in *Segal,* the Colorado Supreme Court has denied children the right to recover monetary damages from a tortfeasor for the loss of consortium with their injured parent. In *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986), our supreme court noted that the interference with a parent-child relationship presented difficult problems related to the efficacy of money compensation as a substitute for the loss of companionship because of the intangible character of the loss and the difficulty in measuring damages to offset it. After considering these factors, among others, it declined to recognize a claim for monetary relief for this interference with a parent-child relationship.

Consideration of the factors and rationale discussed in *Lee* leads us to the conclusion that Ms. McGee's claim must similarly be rejected because it is impossible to ascertain whether any tangible damages were or will be sustained by her because of the custodial order. *See Peterson v. Colorado Potato Flake & Mfg. Co.,* 164 Colo. 304, 435 P.2d 237 (1967).

The record does not disclose any tangible damages to Ms. McGee which might flow from the required *joint* decisions concerning the child's health, education, and general welfare. Even if we assume a difference in the views of the parents, there is no possible way with which to measure or evaluate the damages, if any, flowing from such dispute.

Further, the impact of the divided physical custody could only be measured by comparison to a different standard of visitation which might or might not be ordered by the court. Not only is this different standard unascertainable, and subject to modification by the court in future proceedings, but comparison itself carries the unwarranted assumption that Ms. McGee would be damaged in a tangible manner.

Although some jurisdictions have permitted a claim for the *total* loss of custody, *see Talbot v. Schroeder,* 13 Ariz.App. 230, 475 P.2d 520 (1970) and *McEvoy v. Helikson,* 277 Or. 781, 562 P.2d 540 (1977), those rulings are not persuasive here. *Talbot* is distinguishable because the attorney acted

in a fraudulent manner to deprive the mother of custody during the time that she was emotionally unstable. *McEvoy* is also distinguishable. There, the father had been awarded sole custody, but because of the disobedience by the wife's attorney to an order of court, the wife was able to abscond with the child. Neither of those factual circumstances exists here.

## IV.

Finally, there is no evidence that any attorney fees incurred by Ms. McGee in the preparation for final orders would not have had to have been incurred in any event.

Accordingly, we conclude that Ms. McGee's claim does not present a compensable loss, but rather presents issues of custody more properly directed to the court wherein the dissolution proceedings are filed for the appropriate remedy consistent with the child's best interests. Thus, Ms. McGee has failed to state a claim against Hyatt upon which relief may be granted. *In re Marriage of Segal, supra.*

Because of our resolution of the issues, the other contentions of error need not be considered.

The judgments are reversed, and the cause is remanded with instructions that the complaint be dismissed.

TURSI and JONES, JJ., concur.