(820 P.2d 725)

No. 66,246

ANGELA WILSON-CUNNINGHAM, *et al.*, *Appellants*, v. PATRICIA A. MEYER, *et al.*, *Appellees*.

Opinion filed November 15, 1991.

*Craig E. Collins*, of Topeka, for appellants.

*Sheryl A. Bussell*, of Iola, for appellee Patricia A. Meyer.

*Robert K. Scovel*, of Scovel, Emert, Heasty & Chubb, of Independence, for appellees Roger L. Gossard, an individual, and Becker, Hildreth, Gossard, Hassenplug, Abel and Kritz, P.A., a professional association.

Before PIERRON, P.J., LARSON and RULON, JJ.

RULON, J.: Angela Wilson-Cunningham, *et al.*, plaintiffs, appeal the district court's grant of summary judgment to Patricia A. Meyer, Roger L. Gossard, and Becker, Hildreth, Gossard, Hassenplug, Abel and Kritz, P.A., in a legal malpractice action.

Essentially we must decide if plaintiffs have a cause of action either in tort or contract against defendants. For the reasons detailed below, we affirm the district court's grant of summary judgment.

## FACTUAL HISTORY

The material facts of this case are undisputed and are as follows:

This action for legal malpractice arises from a 1987 divorce proceeding between Charles and Anita Wilson. Anita retained Roger Gossard to represent her in the divorce, and Charles retained Patricia Meyer (now Patricia Bouziden) to represent him.

A divorce hearing was held on November 5, 1987. Charles and Anita each testified that while they had nearly reached a property settlement agreement, they had not yet agreed on the division of certain items of personal property, primarily household items.

Each agreed that he or she would prepare a list of these items that he or she desired. If they could not agree on the division, they would present the matter to the district court for resolution. Neither Charles nor Anita foresaw a problem in dividing this property.

After hearing the evidence and being fully advised, the district court granted the parties a divorce; approved the parties' stipulations as to property division, maintenance, and child custody and support; and ordered Gossard to prepare a decree of divorce. The court further ordered that if the parties could not reach agreement as to final division of household items, the court would order a division at a later date.

On November 11, 1987, Anita sent her list of household items to Gossard, who received it on November 12 or 13, 1987. Gossard then forwarded this list to Meyer on November 17, 1987, along with a proposed decree of divorce. He requested that Meyer approve the decree and return it to him for filing. Meyer returned the decree to Gossard by mail dated November 23, 1987, the Monday before the Thanksgiving holiday. Gossard took the decree to the district court clerk for filing on December 1, 1987, but the decree was not filed until December 4, 1987, at 9:00 a.m. Charles Wilson died intestate December 4, 1987, at 12:16 a.m.

Anita subsequently moved the district court, under the provisions of K.S.A. 60-260, for relief from the decree of divorce filed December 4, 1987. Ultimately, the district court granted the requested relief on the ground the divorce decree was ineffective to terminate the marriage because the decree was filed after Charles' death. Our Supreme Court affirmed this ruling. *In re Marriage of Wilson*, 245 Kan. 178, 777 P.2d 773 (1989).

On December 4, 1989, the children of Charles who were not of his marriage to Anita filed a petition against the defendants, claiming: (1) because the divorce decree was not timely filed, Anita received a spousal share from Charles' intestate estate and joint tenancy property valued at nearly $580,000; (2) consequently, plaintiffs received a smaller share of Charles' estate; (3) the defendants were negligent per se because they breached a duty to timely file the decree pursuant to K.S.A. 60-258, K.S.A. 60-2702a, and Supreme Court Rule 170 (1990 Kan. Ct. R. Annot. 123); (4) Meyer did not represent Charles with the reasonable

and ordinary skill of a legal practitioner; (5) individual defendants breached their contractual duties owed to Charles and plaintiffs as third-party beneficiaries by failing to timely file the divorce decree; (6) Meyer breached her contractual duty to represent plaintiffs; and (7) Gossard and his firm breached their delegated duty to timely file the divorce decree.

The plaintiffs and defendants eventually filed motions for summary judgment, all agreeing no material factual issues were in dispute. In addition to the above undisputed facts, the district court found: Anita through intestate succession and joint tenancy received property worth at least $613,219; the remainder of Charles' estate equaled nearly $68,143; and if the divorce had been final at Charles' death, his probate estate would have been $530,646.

The district court then granted summary judgment to defendants, concluding: (1) There existed no issues as to any material facts; (2) whether an attorney erred is a question of law in a legal malpractice action; (3) the defendants' failure to file the divorce decree within the time limits prescribed by Supreme Court Rule 170 was not negligence per se; (4) the delay in filing the decree of divorce was not legal malpractice, because under the facts of this case, the parties did not reach an agreement as to disposition of all personalty at the divorce hearing; (5) no attorney-client relationship existed between Meyer and plaintiffs; (6) no privity of contract existed between Meyer and plaintiffs; (7) there was no showing that Meyer's claimed negligence or omissions proximately caused harm to plaintiffs; (8) no privity of contract existed between Gossard and plaintiffs; (9) an attorney is not liable to a client's adversary for negligence or breach of contract; and (10) under the test enunciated in *Pizel v. Zuspann*, 247 Kan. 54, 795 P.2d 42, *modified* 247 Kan. 699, 803 P.2d 205 (1990), Meyer and Gossard owed the plaintiffs no duty in their representation of Charles and Anita.

## ACTION IN TORT

Plaintiffs argue to us the defendants are liable to them for their affirmative acts or omissions in representing Charles and Anita during the couple's divorce under the test adopted by our Supreme Court in *Pizel*, 247 Kan. 54. Necessarily, plaintiffs argue

each factor of the *Pizel* test weighs favorably toward a conclusion that defendants owed plaintiffs a duty in the representation of Charles and Anita in the divorce action.

Defendant Meyer claims when the *Pizel* test is applied to her in representation of Charles, there is no legal duty flowing from her to the plaintiffs. Meyer contends the divorce action was not intended to benefit plaintiffs. However, if it was intended to benefit plaintiffs, any harm caused to them by her acts or omissions was unforeseeable. Finally, Meyer urges that if plaintiffs' claim is permitted, an unfair burden would be placed on the legal profession.

Defendant Gossard argues that he had no duty to Charles or plaintiffs because he contracted to represent Anita. He also asserts the divorce action was not intended to benefit plaintiffs and that imposing liability under these circumstances would place an unwarranted burden on legal practitioners.

In granting summary judgment to the defendants, the district court essentially agreed with their contentions as stated above.

As we have often stated, the rules of summary judgment are well established:

"A moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden is on the moving party to demonstrate that no genuine issue of material fact exists when the record is viewed in a light most favorable to the nonmoving party." *Crooks v. Greene*, 12 Kan. App. 2d 62, Syl. ¶ 1, 736 P.2d 78 (1987).

"The plain language of K.S.A. 1987 Supp. 60-256(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Heinsohn v. Motley*, 13 Kan. App. 2d 66, Syl. ¶ 1, 761 P.2d 796 (1988).

In an action for negligence, the existence of a duty to the plaintiff by the defendant is an essential element of the plaintiff's case. Consequently, if the plaintiffs here failed to show that Meyer and Gossard owed them a duty, the grant of summary judgment was proper. In determining whether the grant of summary judgment was proper, we do not need to reach the issue of whether Meyer and Gossard were negligent in their representation of Charles and Anita. We need to determine only whether Meyer and Gossard owed the plaintiffs a duty.

In *Pizel*, our Supreme Court considered whether a nonclient may sue an attorney in tort for the attorney's conduct in representing a client or, in other words, whether the nonclient could recover under a legal duty owed directly to the nonclient by the attorney. Attorney Whalen was sued by the potential beneficiaries of a failed inter vivos trust for legal malpractice in work done for the trust settlor in amending the trust agreement and advising the settlor about the requirements and operation of a trust. 247 Kan. at 57-58. After the settlor's death, the trust had been invalidated because the settlor lacked present trust intent when establishing the trust. 247 Kan. at 58. The jury found Whalen at fault, although it also found that Whalen did not breach his contract with the settlor and that the plaintiffs were not third-party beneficiaries of that attorney-client contract. 247 Kan. at 64.

The *Pizel* court, in concluding Whalen owed a duty in tort to the intended beneficiaries of the failed trust despite a lack of contractual privity, adopted a multi-criteria balancing test developed by the California Supreme Court. The court noted this test is "closely related to the analysis and policy reasons used to justify permitting a third-party beneficiary to recover in a contract action." 247 Kan. at 64. The six criteria of the test are as follows:

(1) The extent to which the transaction was intended to affect the plaintiffs.

(2) The foreseeability of harm to the plaintiffs.

(3) The degree of certainty that the plaintiffs suffered injury.

(4) The closeness of the connection between the attorney's conduct and the injury.

(5) The policy of preventing future harm.

(6) The burden on the profession of the recognition of liability under the circumstances. 247 Kan. at 67-68.

Applying the above criteria to the facts in *Pizel*, the court concluded that under the terms of the failed trust, the plaintiffs were the intended beneficiaries of the trust. The harm to the beneficiaries was also foreseeable because if the trust failed, the property which was the res of the trust would not pass as intended by the trust's terms. It was also certain the beneficiaries suffered injury from the trust's failure because the property which was to be the res instead passed through the residuary clause of the settlor's will. 247 Kan. at 67. There was a close connection between attorney Whalen's conduct and the beneficiaries' injury because Whalen drafted an amendment to the trust adding a trustee and acted as an attorney for the settlor for several years while the trust was supposedly in operation. As for the policy of preventing future harm, the court concluded if the beneficiaries were not allowed to pursue a negligence claim against Whalen, they would have no avenue of recovery. Finally, the court determined that the legal profession would not be unduly burdened by requiring a lawyer to act in a reasonably competent manner in the representation of his or her clients. 247 Kan. at 68.

Applying the multi-criteria *Pizel* test to the facts in the present case, we conclude plaintiffs have no cause of action in tort against defendants.

The first factor is the extent to which the transaction, Charles' and Anita's divorce, was intended to affect the plaintiffs. The plaintiffs argue that Charles intended to dispose of his property upon his death through intestate succession. Because the divorce decree would sever his marriage to Anita as well as award him certain property free and clear of any claim by Anita, the plaintiffs further argue that Charles intended that his divorce and accompanying property settlement increase the size of what would be his intestate estate. Charles therefore intended the divorce to affect the plaintiffs, who as his heirs apparent would receive a greater inheritance at his death.

On the facts of this case, it is difficult to understand how a divorce could be intended to benefit the heirs apparent of one of the divorcing parties. The purpose of a divorce is to sever a marital relationship, determine respective rights to the marital

property, and provide for spousal maintenance and the support and custody of any minor children of the marriage. The California Court of Appeals essentially found that a divorce action is not intended to affect the children of the divorcing parties when considering the first factor of the multi-criteria test in *Haldane v. Freedman*, 204 Cal. App. 2d 475, 22 Cal. Rptr. 445 (1962). In that case, the children of a divorced couple attempted to sue the attorneys who represented their mother during the divorce. They claimed *inter alia* that the attorneys' negligence in that action caused the wasting of their mother's estate, thereby destroying the estate they could reasonably expect to inherit from her. 204 Cal. App. 2d at 477. The court applied a multi-criteria test similar to that adopted in *Pizel* to determine whether the children should be allowed to proceed with their negligence claim. In considering the extent to which the divorce was intended to affect the plaintiffs, the court concluded "[i]f the plaintiffs were affected by the divorce proceedings alleged in the complaint, the impact thereof upon them was not actionable." 204 Cal. App. 2d at 479.

Further, there is no indication in the record that Charles intended to use his divorce as an estate planning device. Unquestionably, any property settlement with Anita from the divorce would affect any estate he would devise or that would pass through intestate succession. However, this was merely an incidental effect of the divorce. Charles' intent in pursuing a divorce from Anita was to sever the marital relationship and property ownership he shared with Anita. From our review of the record, Charles did not articulate an intent that the divorce action should have any effect on the plaintiffs.

Plaintiffs next argue that the harm caused to them was foreseeable simply because it was foreseeable that Charles could die before the decree was filed. Consequently, because defendants knew that Charles had children who would be his heirs, it was foreseeable that his death prior to the finalization of the divorce would financially harm those heirs. As noted above, however, a divorce action is not usually intended to affect anyone other than the parties seeking the divorce and their minor children in matters of custody and support. Again, we see no indication that Charles intended to use the divorce and its accompanying prop-

erty settlement as a device to plan his estate, whether it be testate or intestate. Harm to any share the plaintiffs might receive from Charles' estate was therefore certainly not foreseeable. Stated another way, it was not foreseeable that action by the attorneys in the dissolution of the marriage between Charles and Anita would harm the plaintiffs. The plaintiffs were not parties intended to be affected by the divorce.

As for the degree of certainty that the plaintiffs suffered injury, they argue the value of the property they would have received from Charles' estate had he been divorced at his death is certain and calculable. However, there is no certainty that the plaintiffs suffered any financial injury from the attorneys' alleged negligence in filing the divorce decree. Charles died intestate. The plaintiffs' interests in this intestate estate at the time of the defendants' alleged negligence were merely speculative. If Charles survived until after the divorce was effective, the shares claimed by the plaintiffs could have been decreased or eliminated by Charles executing a will or transferring ownership of his assets. These considerations also weaken the connection between the defendants' conduct and the plaintiffs' alleged injury, the fourth factor of the *Pizel* multi-criteria test. While the plaintiffs received smaller intestate shares because Charles was still married at the time of his death, they could also have received smaller shares due to inter vivos transfers or the execution of a will by Charles.

The plaintiffs' argument that the policy of preventing future harm would be enhanced by allowing them to pursue their claim centers on their argument that the harm to their interests by defendants' alleged negligence was foreseeable. As discussed earlier, however, harm to these plaintiffs from actions or omissions in Charles' and Anita's divorce was not foreseeable. Allowing individuals to whom there was no foreseeable risk of harm to bring an action for negligence would not prevent future harm to individuals to whom there is a foreseeable risk for negligent representation.

Finally, the burden on the legal profession resulting from the recognition of liability under these particular circumstances would be unreasonable. Charles and Anita retained the defendants to represent them for the purpose of obtaining a divorce and an agreement on property, maintenance, and child support and cus-

tody issues. Clearly Charles did not intend his divorce action to affect, either beneficially or detrimentally, the plaintiffs. The attorneys' duty in this instance was not to represent whatever future interests the plaintiffs might have had in Charles' estate. To conclude that attorneys in situations like the one here presented owe a legal duty to divorcing parties' adult children could also create conflict-of-interest problems. See *Pelham v. Griesheimer*, 92 Ill. 2d 13, 21, 440 N.E.2d 96 (1982). The children's possible interests in a sizable intestate estate of a deceased parent could easily clash with the parent's present interest in reaching agreement on property and maintenance issues in the divorce. If an attorney must be concerned with the former, his or her effectiveness in representing the latter could be compromised. An attorney representing a client in a divorce should not suffer such a burden.

In summary, the defendants should not be found to owe a legal duty to the plaintiffs for actions taken or not taken in their father's divorce. Although a weighing of each factor in the *Pizel* multi-criteria test supports our conclusion, we believe the factor that the divorce was not intended to affect the plaintiffs is the most persuasive. While our reading of *Pizel* is that all six factors must be considered and none can be deemed conclusive, we believe it would be appropriate to deny liability solely on the basis that the legal representation in the divorce action was not intended to benefit Charles' children. Cases where attorneys have been found liable to nonclients under the multi-criteria test do seem to place greater emphasis on this factor. Note, *Liability of an Attorney to Third Party Beneficiaries for Legal Malpractice in Kansas: The Death of Privity*, 30 Washburn L.J. 501, 520 (1991).

## ACTION IN CONTRACT

The plaintiffs argue that defendant Meyer, as Charles' retained attorney, owed a contractual duty to Charles to see that the divorce decree was timely filed. Because Meyer failed in this duty, she is liable for breach of contract. The plaintiffs then argue that Meyer delegated her duty to timely file the decree to defendant Gossard; Gossard thus entered into an agency contract with Charles. Acording to plaintiffs, Gossard, as Charles' agent, also failed in his duty to Charles to see that the decree was timely filed.

The district court found no contractual relationship between Meyer and the plaintiffs, and also concluded that because defendant Gossard represented Anita in the divorce, only Anita could sue defendant Gossard for breach of contract.

The plaintiffs, while arguing that contracts existed between Charles and the defendants, fail in the necessary next step of establishing their claim for breach of contract against the defendants, that of showing they may enforce the contracts as third-party beneficiaries. It is well established that where a person makes a promise to another for the benefit of a third person, that third person may maintain an action to enforce the contract even though he or she possessed no knowledge of the contract when made and provided no part of the consideration. *Cornwell v. Jespersen*, 238 Kan. 110, 115, 708 P.2d 515 (1985). The plaintiffs, as part of their arguments in support of a cause of action in tort, do argue that Charles intended his divorce to benefit them as his heirs. However, as discussed earlier, Charles' and Anita's divorce was not intended to affect the plaintiffs. Only third parties intended to benefit from the contract can enforce the contract as third-party beneficiaries. 238 Kan. at 115; *Noller v. General Motors Corp.*, 13 Kan. App. 2d 13, 21-24, 760 P.2d 688 (1988), *aff'd in part, rev'd in part* 244 Kan. 612, 772 P.2d 271 (1989).

Viewing the plaintiffs' status in relation to the Charles-Meyer contract in the most favorable light indicates that the plaintiffs would possibly be only incidental beneficiaries to the contract. This class of beneficiary receives benefits from a contract which are merely incidental to and not intended by the contract's performance; an incidental beneficiary cannot enforce the contract for his or her benefit. 238 Kan. at 115. It is possible that if Charles had been divorced at the time of his death, the plaintiffs would have received larger shares of his estate due to the absence of any claim by Anita to property in which Charles had an interest. But such a benefit would only be an incident of the divorce, and thus only an incident of Meyer's representation of Charles in the divorce.

Assuming that Gossard and Charles did have a contractual relationship because Gossard was Charles' agent for the purpose of filing the decree, the analysis applied to the plaintiffs' status in

relation to the Charles-Meyer contract leads to the same conclusion. As the divorce was not intended to affect the plaintiffs, the plaintiffs could not have been intended beneficiaries of any contract entered into by Charles in pursuance of the divorce. Plaintiffs therefore cannot enforce any contract which may or may not have existed between Charles and Gossard. The district court's award of summary judgment to the defendants on the plaintiffs' breach of contract claims is affirmed.

In light of the above, we have considered, but need not reach, the other issues presented.

Affirmed.