13 P.3d 671 (2000)
Christine M. STRAIT, and Joseph J. Ganz as the Guardian Ad litem of Samantha Anne Ishmael, Appellants,
v.
W. James KENNEDY and Jane Doe Kennedy, individually and the marital community composed thereof; Thorner, Kennedy & Gano, P.S., a Washington Professional service corporation, Respondents.
No. 46564-3-I.
Court of Appeals of Washington, Division 1.
December 4, 2000.
*672 Roger K. Anderson, Seattle, for Appellants.
Roger B. Leighton, Stephanie Bloomfield, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, P.L.L.C., Tacoma, for Respondents.
KENNEDY, J.
This is an appeal of a summary judgment dismissing the legal malpractice claim brought by two daughters against their deceased mother's marital dissolution attorney, claiming that he failed to timely finalize their mother's divorce prior to her death, thereby causing them to lose portions of their inheritance. Under Trask v. Butler, 123 Wash.2d 835, 842-43, 872 P.2d 1080 (1994), a nonclient plaintiff has standing to sue an attorney only if the transaction was intended to benefit the nonclient. Because the daughters failed to meet this threshold inquiry, we affirm.

FACTS
In 1980, Anne Marie Ishmael executed a will, bequeathing her entire estate to her then only child, Christine Marie Strait, and to any after-born children. Ms. Ishmael and Samuel Ishmael were married in 1983, and in 1984 they had a daughter, Samantha Anne Ishmael. Christine Strait is an adult, and Samantha Ishmael is a minor who lives with her father.
In July 1991, Ms. Ishmael retained W. James Kennedy and the law firm of Thorner, Kennedy and Gano, P.S., to represent her in an action dissolving the Ishmael marriage. A member of this same law firm had prepared Ms. Ishmael's 1980 will. In April 1992, the court held a hearing regarding the dissolution and resolved all issues except the distribution of Mr. Ishmael's pension with his employer, J.C. Penney. Because additional discovery was needed before this issue could be resolved, the court did not issue a decree of dissolution of marriage.
In May 1992, J.C. Penney sent pension information to Mr. Ishmael's attorney. In August 1992, Kennedy requested the pension information from Mr. Ishmael's attorney, but got no response. In November 1992, Ms. Ishmael sent a letter to Kennedy, requesting that he move to finalize the dissolution. In December 1992, Kennedy again requested the pension information from Mr. Ishmael's attorney, to no avail. On April 19, 1993, Kennedy deposed Mr. Ishmael and a J .C. Penney manager. And on May 12, 1993, Kennedy asked an associate to prepare interrogatories to J.C. Penney. Thereafter, Kennedy did not pursue the finalization of Ms. Ishmael's dissolution further.[1]
One year and three months later, on August 12, 1994, Ms. Ishmael died in an automobile accident. Because the dissolution was not finalized, and because Ms. Ishmael's 1980 will did not provide for Mr. Ishmael, the will was deemed revoked as to him, under former RCW 11.12.050 (repealed effective January 1, 1995). Thus, he was entitled to his intestate share of Ms. Ishmael's estate, and the daughters received a smaller portion of their mother's estate under her will than they would have had the marital dissolution been finalized by the time of her death.
On August 7, 1997, Anne Marie Ishmael's daughters, Christine Marie Strait and Samantha Anne Ishmael, filed a complaint *673 against Kennedy for legal malpractice. On July 23, 1999, the court dismissed their claims on summary judgment. The daughters appeal.

DISCUSSION
When reviewing an appeal of a summary judgment order, the appellate court engages in the same inquiry as the trial court. Reynolds v. Hicks, 134 Wash.2d 491, 495, 951 P.2d 761 (1998). Summary judgment is appropriate if, when taking the facts most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hansen v. Friend, 118 Wash.2d 476, 485, 824 P.2d 483 (1992).
The daughters' legal malpractice claim is premised on their contention that Kennedy breached a duty owed to them, as nonclient beneficiaries of their mother's dissolution action, to timely finalize their mother's marital dissolution, thereby causing them to lose significant portions of their mother's estate. The daughters contend that they were intended beneficiaries of the dissolution action because their mother executed a will, prior to her marriage to Mr. Ishmael, leaving her entire estate to them; that Kennedy knew or should have known the provisions of the will because a member of his law firm prepared the will, and because Kennedy knew that if Ms. Ishmael died before the marital dissolution became final, her testamentary intent as expressed in the will would be frustrated by operation of former RCW 11.12.050, which statute had not then been repealed.
In general, only an attorney's client may file a claim for legal malpractice. Trask v. Butler, 123 Wash.2d 835, 839-40, 872 P.2d 1080 (1994). A nonclient plaintiff must prove, among other things, the existence of an attorney-client relationship that gives rise to a duty of care to the plaintiff, in order to establish a legal malpractice claim. Trask at 839, 872 P.2d 1080 (citing Hizey v. Carpenter, 119 Wash.2d 251, 260-61, 830 P.2d 646 (1992)).
Washington cases have not specifically addressed whether an attorney representing one party in a dissolution action owes any duty to the client's children as heirs apparent of the client's estate. However, in Trask, the Washington Supreme Court adopted a modified multifactor balancing test to determine generally whether a lawyer owes a duty to a nonclient. The elements of the modified multifactor balancing test are:
(1) The extent to which the transaction was intended to benefit the plaintiff;
(2) The forseeability of harm to the plaintiff;
(3) The degree of certainty that the plaintiff suffered injury;
(4) The closeness of the connection between the defendant's conduct and the injury;
(5) The policy of preventing future harm; and
(6) The extent to which the profession would be unduly burdened by a finding of liability.
Trask, 123 Wash.2d at 843, 872 P.2d 1080.[2] The threshold inquiry under the modified *674 multifactor balancing test is whether the plaintiff is an intended beneficiary of the transaction; if the plaintiff was not an intended beneficiary of the transaction, no further inquiry need be made. Id. Put another way, if the plaintiff was not an intended beneficiary of the transaction, the plaintiff lacks standing to sue the attorney for legal malpractice. Leipham v. Adams, 77 Wash. App. 827, 832, 894 P.2d 576 (1995) (citing Trask, 123 Wash.2d at 842-43, 872 P.2d 1080). An "intended beneficiary" of the transaction under Trask means just that the transaction must have been intended to benefit the plaintiff; it is not enough that the plaintiff may be an incidental beneficiary of the transaction. See Trask, 123 Wash.2d at 845, 872 P.2d 1080 ("[T]he estate and its beneficiaries are incidental, not intended beneficiaries of the attorney-personal representative relationship[.]" (emphasis in original)).
Following Trask, we examine the threshold question of whether the attorney's services were intended to benefit the plaintiffs as heirs apparent of their mother's estate. In other words, if Kennedy's representation of Ms. Ishmael in the marital dissolution action was not intended to preserve and protect the daughters' expectancies under the will Ms. Ishmael executed in 1980, the daughters' claims must fail as a matter of law. That timely entry of a final decree dissolving the Ishmael marriage may have incidentally preserved and protected the daughters' expectancies under that will is not relevant to the inquiry.
Jurisdictions other than Washington have considered the issue of whether an attorney representing one party in a marital dissolution owes any duty to the client's children as heirs apparent, and each has held that such an attorney does not owe such a duty. See Wilson-Cunningham v. Meyer, 16 Kan. App.2d 197, 820 P.2d 725 (1991); Haldane v. Freedman, 204 Cal.App.2d 475, 22 Cal.Rptr. 445 (1962).
In Wilson-Cunningham, the Kansas Court of Appeals considered a claim very similar to the one at bar. There, attorney Meyer represented Charles Wilson in a dissolution action. 820 P.2d at 726. A hearing was held and the parties testified that although they had nearly reached a property settlement agreement, they had not yet agreed on the division of certain items. The parties also testified that they thought they could resolve their remaining issues but if they could not they would present the issues to the trial court for resolution. The court granted the dissolution, approved the parties stipulations as to property division, maintenance, child custody and support, and provided that if the parties could not reach agreement as to the remaining issues the court would order a division at a later date. Id. A few weeks later, the parties agreed on the final disposition and both the parties signed the final decree. Id. The decree was ready to be filed on November 23, 1987. Id. At 12:16 a.m., on December 4, 1987, Charles *675 Wilson died intestate. Id. The decree was filed at 9 a.m. on December 4, 1987. Id. The divorce decree was ineffective to terminate the marriage because the decree was filed after Mr. Wilson's death. Id.
Charles' children from a former marriage sued Meyer claiming that they received a smaller share of their father's estate because, due to the untimely filing of the divorce decree, his wife received a spousal share of his estate by intestate succession. Id. The children alleged tort and contract claims against Meyer, claiming that he owed them a duty as intended beneficiaries of the representation and, alternatively, as third-party beneficiaries on the contract between Charles and Meyer. Id.
The Kansas Court of Appeals rejected the argument that the children were intended beneficiaries of the attorney-client relationship. The court applied the multifactor analysis utilized by the California and Kansas courts (in which the first factor is the extent to which the transaction was intended to affect the plaintiff) and concluded that the purpose of the dissolution "was not to represent whatever future interests the plaintiffs might have had in Charles' estate." Wilson-Cunningham, 820 P.2d at 730. Rather, the court found that the purpose of a dissolution is to "sever a marital relationship, determine the respective rights to marital property, and provide for spousal maintenance and the support and custody of any minor children of the marriage." Id. at 729. The court found no indication in the record that Charles intended to use his divorce as an estate planning device. Id. And for these same reasons, the court concluded that the children had no cause of action for breach of contract: "[A]s discussed earlier, Charles' and Anita's divorce was not intended to affect the plaintiffs. Only third parties intended to benefit from the contract can enforce the contract as third-party plaintiffs." Id. at 731 (citations omitted). At most, Charles' children were only incidental beneficiaries of the contract, and "an incidental beneficiary cannot enforce the contract for his or her benefit." Id. at 731 (citations omitted).
Likewise, the daughters in this case fail to show that they were intended beneficiaries of their mother's dissolution action. The only evidence they produce regarding "intent" is that their mother executed a will in 1980 that bequeathed her entire estate to her children. But that fact is not relevant to our inquiry into what Ms. Ishmael intended to accomplish by virtue of her dissolution action and what her attorney's duties were to her in his representation in that action. As the court stated in Wilson-Cunningham, "it is difficult to understand how a divorce could be intended to benefit the heirs apparent of one of the divorcing parties." Id. at 729. Like in Wilson-Cunningham, there is no indication in the record for this appeal that Ms. Ishmael intended her marital dissolution action to serve as an estate planning device. Indeed, there are far less drastic measures than entry of marital dissolution decree by which to disinherit a spousea simple will or codicil to an earlier will stating that the testator intends to leave nothing to the spouse is sufficient for that purpose. In re Estate of Lindsay, 91 Wash.App. 944, 949, 957 P.2d 818, 821 (1998), review denied, 137 Wash.2d 1004, 972 P.2d 466 (1999).
The daughters nonetheless attempt to distinguish Wilson-Cunningham, contending that the Kansas court found that there was no duty because the deceased died intestate, unlike their mother. The language of the opinion contradicts that interpretation of the court's reasoning. The court stated, "[u]nquestionably, any property settlement with [the wife] from the divorce would affect any estate he would devise or that would pass through intestate succession. However, this was merely an incidental effect of the divorce." Id. at 729. And the court stated further: "Again, we see no indication that Charles intended to use the divorce and its accompanying property settlement as a device to plan his estate, whether it be testate or intestate." Id.
The daughters also attempt to distinguish Wilson-Cunningham by arguing that the attorneys in that case did not commit malpractice, asserting that Kennedy, by contrast, did. They argue that in Wilson-Cunningham, the delay in getting the final divorce decree was short in duration, while in the present case, the delay extended over two *676 years. The daughters do not cite any authority for the proposition that the mere passage of time creates a duty to a nonclient. In this case, Kennedy either had a duty to the daughters from the first day he represented Ms. Ishmael, or the duty never existed. The passage of time relates only to an alleged breach of duty, not to the creation of a duty.
In Haldane v. Freedman, 204 Cal.App.2d 475, 22 Cal.Rptr. 445 (1962), the California Court of Appeals also held that a divorce action is not intended to affect the children of divorcing parties. In Haldane, the minor children of a couple divorced by interlocutory decree sued the attorneys who represented their mother, claiming that the attorneys' negligence wasted the estate they would have inherited from her and deprived the plaintiffs (and their mother) of their father's support and society. The Haldane court concluded with respect to the disruption of the family,
an attorney commits no actionable wrong simply because, pursuant to express statutory authority, he undertakes the representation of a [party] in a domestic relations matter, even though such action will necessarily involve the custody of children and disrupt the normal family relationship. If the [children] were affected by the divorce proceedings alleged in the complaint, the impact thereof upon them was not actionable, although (as is usually the case) quite regrettable.
204 Cal.App.2d at 478-79, 22 Cal.Rptr. 445. As for the alleged depletion of the mother's estate, the court observed that because the mother could make a will disinheriting the children so long as she had testamentary capacity to make a will, the children had no vested right in her estate but only a mere expectancy; thus "it can hardly be said that there is any direct connection between [the attorney's] alleged conduct and plaintiffs' `injury' which possesses such certainty that [the attorney] could be held liable in the absence of privity." Id. at 480, 22 Cal.Rptr. 445.
Although the Trask court stated that if the transaction was not intended to benefit the plaintiff, no further inquiry need be made, Trask, 123 Wash.2d at 843, 872 P.2d 1080, the court went on to say:
The multifactor balancing test also requires that we evaluate public policy before finding a duty to a third party. 1 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 7.9 (3d ed.1989). The policy considerations against finding a duty to a nonclient are the strongest where doing so would detract from the attorney's ethical obligations to the client. 1 Mallen & Smith § 7.11. This occurs where a duty to a nonclient creates a risk of divided loyalties because of a conflicting interest or of a breach of confidence. 1 Mallen & Smith § 7.11.
Trask, 123 Wash.2d at 844, 872 P.2d 1080. The court also cited 1 RONALD E. MALLEN & JEFFREY M. SMITH, sec. 7.11 for the proposition that "the beneficiary test does not apply in an adversarial context[.]" (additional citation omitted). From this, we conclude that the determination of whether a transaction was intended to benefit a nonclient plaintiff is more than merely factual; it has public policy ramifications akin to those accompanying inquiries into legal causation. See Meneely v. S.R. Smith, Inc., 101 Wash.App. 845, 863, 5 P.3d 49, 58 (2000). ("Issues of duty and legal causation are intertwined.").
The Colorado case of McGee v. Hyatt Legal Serv., Inc., 813 P.2d 754 (Colo.App.1990), illustrates the policy reasoning against finding that a dissolution attorney owes his client's children a duty. In McGee, Barbi McGee hired the defendant law firm to defend her in a marriage dissolution. Id. at 756. When Ms. McGee became dissatisfied with the firm's handling of the custody issue in her case, she and her child sued the firm. The court dismissed the case brought by the child, holding that the attorney representing a spouse in a marriage dissolution action has no duty towards the children.
The McGee court stated that "[a]n attorney hired to represent a spouse in a dissolution proceeding does not per se represent the interests of the minor children of the marriage." Id. at 757. The court continued, "because the interests of Ms. McGee and the child in the custody proceeding were not necessarily identical, we reject the child's argument that she could rely upon the proper performance of [the firm's] duty to her *677 mother as a beneficiary thereof." Id. And regarding the policy implications of the child's claims, the court stated that there is a significant conflict, "[i]f ... custody is contested by each parent seeking sole custody, then, since the best interests of the child may be contrary to the parent's wishes, the duty of counsel to exert his best ethical efforts on his client's behalf is inconsistent with any duty he might owe to the child." Id. at 757. Accord Harrington v. Pailthorp, 67 Wash.App. 901, 907-08, 841 P.2d 1258 (1992) (mother's attorney in an action to modify a parenting plan did not represent the children, gratuitously or otherwise; father, who was represented by his own attorney both in the original dissolution action and in the modification action, was not a third-party beneficiary of the parenting plan; multifactor balancing test had no application to modification proceeding, which was adversarial from the outset).
Although the daughters claim otherwise, to conclude that Kennedy owed a duty to the daughters would create a conflict-of-interest situation, not only in this case but in other cases for which this case will set precedent. Because Christine Strait is an adult and Samantha Ishmael is a minor with a right to support, the daughters do not have the same interest in their mother's estate that their mother had; neither do the daughters have identical interests between them. Therefore, if Kennedy had a duty to the daughters as well as to Ms. Ishmael, conflicts could have arisen between Samantha's right to support, or Christine's interest in her mother's estate, and Ms. Ishmael's interest in reaching a property settlementor, for that matter, in Ms. Ishmael's interest in finalizing the dissolution action if, indeed, as claimed by Mr. Ishmael, the parties had decided to abandon the marital dissolution action altogether before Ms. Ishmael's death. A lawyer's duty of undivided loyalty to his or her client in a marital dissolution action may well conflict with children's best interests with respect to parenting issues, child support of minor dependent children, college education expenses of adult dependent children, spousal maintenance, and the distribution of propertynot to mention the wisdom of dissolving the marriage in the first instance or of reconciliation of the marriage in cases involving domestic violence or other instances of abuse of spouses and children in all its various guises. Placing a duty upon a lawyer for a party to a marital dissolution to protect all the myriad interests of both the client and the client's adult or minor children, whether those interests be financial, physical or emotional, would be untenable.
In summary, by representing Ms. Ishmael in the marital dissolution action, Kennedy did not, and as a matter of law could not, confer any direct benefit to the children. Because the daughters fail to show that their mother's marital dissolution action was intended to benefit them as her heirs apparent, they cannot show a duty running from Kennedy to them, and their claims were properly dismissed on summary judgment.
Accordingly, we affirm the trial court's order granting summary judgment to the attorneys who represented Ms. Ishmael in her marital dissolution action.
APPELWICK, J., and GROSSE, J., concur.
NOTES
[1] Mr. Ishmael subsequently testified that he and his wife had abandoned their plans to finalize the marital dissolution. Kennedy testified that Ms. Ishmael never instructed him not to go forward with the action. For purposes of summary judgment, we presume that Ms. Ishmael still desired to end the marriage at the time of her death.
[2] The Trask court explained that the modified multifactor balancing test is a combination of the third-party beneficiary test and the multifactor balancing test that was applied in the case of Bohn v. Cody, 119 Wash.2d 357, 832 P.2d 71 (1992). Trask, 123 Wash.2d at 842, 872 P.2d 1080. In Bohn, the first of the multifactors was "[t]he extent to which the transaction was intended to affect the plaintiff[.]" Bohn, 119 Wash.2d at 365, 832 P.2d 71 (emphasis ours). After Trask, the first factor to be considered is "the extent to which the transaction was intended to benefit the plaintiff[.]" Trask, 123 Wash.2d at 843, 872 P.2d 1080 (emphasis ours). With this exception, the factors to be balanced under the multifactor balancing test created by the California courts are identical to the factors under Washington's modified multifactor balancing test. The full parameters of this change in wording have yet to be explored by Washington appellate courts. At first blush, given standard dictionary definitions of the words "affect" and "benefit" and the contract-based origins of the third-party beneficiary concept versus the tort-based origins of the multifactor balancing test as developed in California, Washington's modified test would seem to be narrower than the test applied in California. See Pelham v. Griesheimer, 92 Ill.2d 13, 64 Ill.Dec. 544, 440 N.E.2d 96, 100 (1982) ("The analogy to third-party direct beneficiaries to determine the duty owed to a nonclient by an attorney in a negligence action provides for a broader scope of liability than privity, but a narrower scope of liability than the balancing approach used in California." (citing R. MALLEN & V. LEVIT, LEGAL MALPRACTICE sec. 81, at 161 (2d ed.1981)). See also Hetzel v. Parks, 93 Wash.App. 929, 937, 971 P.2d 115 (1999) ("`According to the California Supreme Court, in which the multifactor test originated, its use renders the third-party beneficiary theory `conceptually superfluous'.") (quoting Heyer v. Flaig, 70 Cal.2d 223, 227, 74 Cal.Rptr. 225, 449 P.2d 161 (1969)). Because the Washington courts now use the modified test pronounced in Trask, and because the modified test is a combination of the third-party beneficiary test and the multifactor test developed in California, the contract-based third-party beneficiary concepts may not be conceptually superfluous in Washington, at least under some fact patterns. Still, "even under the California balancing test, the predominant inquiry has generally resolved to one criterion: Were the services intended to benefit the plaintiff?" Pelham, 64 Ill.Dec. 544, 440 N.E.2d at 100 (emphasis ours) (citing R. MALLEN & V. LEVIT, LEGAL MALPRACTICE sec. 80, at 157 (2d ed.1981)). Thus, it is possible that, in practice, the test as applied in California is the same as the test now applied in Washington. We need not resolve this potential dilemma to decide the instant appeal, however, in that for purposes of this case, as was true in Trask, "[t]he two tests are indistinguishable in that their primary inquiry focuses on the purpose for establishing the attorney-client relationship." Trask, 123 Wash.2d at 842, 872 P.2d 1080. Under the facts of this case, that purpose will not differ based on any difference in scope there may be between the terms "affect" and "benefit;" neither will that purpose vary depending on whether contract-based theory or tort-based theory or some combination of the two is applied.