*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-1474

NIGEL L. SCOTT, *et al.*, APPELLANTS,

V.

JANICE BURGIN, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAM-8295-09)

(Hon. Gregory E. Jackson, Trial Judge)

(Argued November 22, 2013                    Decided August 14, 2014)

*Donald M. Temple* for appellants.

*Kenneth H. Rosenau*, with whom *Kimberly K. Fahrenholz* was on the brief, for appellee.

Before GLICKMAN and FISHER, *Associate Judges*, and STEADMAN, *Senior Judge*.

STEADMAN, *Senior Judge*: Appellants Nigel L. Scott and the Yallery and Scott Law Firm (collectively, "Scott") appeal from a jury malpractice award in favor of appellee Janice Burgin, who was not a client of the firm. We hold that, as a matter of law, appellants' duty of care did not extend to Burgin and, accordingly, reverse the judgment.

## I. Factual Background

Kenneth Woodruff ("Woodruff" or the "decedent") was married to, but separated from, Patricia Woodruff when he met Burgin in 1983. He proposed to her in that year and again in 1996. In 1986 Burgin moved in with Woodruff, and they carried on a long-standing close relationship. In January 2006, Burgin had a meeting with Scott in which she asked if Scott would help Woodruff obtain a divorce. Scott's brief handwritten jottings from the meeting contain the notation "(Pension?)". Scott told Burgin that he would help Woodruff obtain a divorce if Woodruff chose to retain him. Woodruff did not attend the meeting because he was in failing health with terminal bone cancer. In her complaint, Burgin asserts: "Woodruff wished to obtain a divorce so that he may marry Plaintiff. Although he had previously designated Plaintiff as the beneficiary of his federal benefits, he was aware that Plaintiff may not receive them unless their union was made official."

Woodruff did not meet with Scott until one year later in January 2007. Burgin escorted Woodruff to the meeting, and she filled out a divorce questionnaire on his behalf while Woodruff and Scott spoke alone. Shortly thereafter, Woodruff signed a retainer agreement for Scott's representation in his

"Divorce Proceedings." Burgin later contacted Scott on six occasions to ask whether the complaint had been served on Patricia Woodruff. Scott did not serve Patricia Woodruff with the complaint until November 2007. Woodruff died in April 2008, and a divorce was never secured prior to his death.

Woodruff had been employed by the United States Postal Service. His retirement benefits were administered by the Civil Service Retirement System. On a "Designation of Beneficiary" form dated January 15, 2007, Woodruff designated Burgin as his beneficiary for any lump-sum payout of his retirement benefits, indicating that Burgin was his "fiancée."[1] Woodruff also designated Burgin as his beneficiary for his Federal Employees' Group Life Insurance on a form dated December 21, 2007. After Woodruff's death, Burgin filed a claim with United States Office of Personnel Management ("OPM") for Woodruff's "survivor benefits." OPM denied Burgin's claim for survivor benefits on May 4, 2009,

---

[1] The form specifically states: "I understand that this designation of beneficiary will not affect the rights of any survivors who may qualify for annuity benefits after my death." As we understand it, the survivor annuity benefits that Burgin seeks are dependent upon marriage. *See* 5 U.S.C. § 8341. The May 4, 2009, letter denying Burgin's claim is not proof to the contrary but instead, read as a whole, appears to reflect the marriage requirement. In any event, as Scott argues, Burgin has failed to meet her evidentiary burden of showing that, without more, she would automatically have been entitled to the claimed survivor annuity benefits under the provisions of the retirement system if the divorce had been perfected prior to Woodruff's death.

"based on evidence provided by another claimant showing that an earlier marriage between the claimant and the deceased was never terminated."

Burgin subsequently brought this suit against Scott for legal malpractice and the related breach of contract as a third-party beneficiary. The jury awarded her damages of $249,600, the amount she assertedly would have received had she been the survivor annuity beneficiary of his pension, plus $5,000 for malpractice damages and $275 in punitive damages. At this point, Scott no longer contests that Woodruff's divorce action was handled negligently. Instead, Scott argues that Burgin lacked standing to sue for malpractice or breach of contract.

## II. Legal Analysis

As an initial matter, Burgin never argued at trial, and does not argue in her brief on appeal, that she was Scott's client. To the contrary, she testified at trial that her understanding was that Woodruff alone was the client.[2] Therefore, if she is to prevail, she must fall within the ambit of Scott's duty of care.[3]

---

[2] At oral argument, appellant suggested that since Scott knew that the primary reason for the divorce was to enable Burgin to secure survivor benefits in Scott's pension, that fact alone was enough to make Burgin a client. Such an

(continued…)

In this jurisdiction, whether a plaintiff falls into the class of persons who may sue an attorney for malpractice has been resolved as "a matter of law." *Hopkins v. Akins*, 637 A.2d 424, 428 (D.C. 1993) (beneficiaries of an estate may not sue attorney for estate's personal representative); *Needham v. Hamilton*, 459 A.2d 1060 (D.C. 1983) (intended beneficiaries of estate may sue attorney who drafted the decedent's will).[4] "It is well established that 'the general rule is that the

_____

(…continued)
argument, made for the first time at oral argument, comes far too late. *See, e.g.*, *Bliss v. Bliss*, 733 A.2d 954, 960 n.13 (D.C. 1999) (court normally will not consider arguments raised for first time at oral argument); *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C. 1988) (parties may not assert one theory at trial and another theory on appeal).

[3] We do not think, at least in the circumstances of this case, any meaningful distinction exists between an analysis of a duty of care as a tort concept and of a third-party beneficiary as a contract concept. While Scott may well have known why Woodruff wanted to obtain a divorce and the jury was instructed on third-party beneficiary law, there is no real evidence here that Scott himself intended to incur any liability beyond that imposed by law as part of his duty of care. Both contracting parties must intend a direct benefit which the third party can enforce against the promisor for classic third-party liability. *See Fort Lincoln Civil Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008). The reference to "(Pension)?" in Scott's notes from the initial meeting with Burgin was plainly inadequate.

[4] In our previous cases we have variously described this issue as a question of the plaintiff's "standing" to bring the claim, *see Teasdale v. Allen*, 520 A.2d 295, 296 (D.C. 1987), a question of whether the right of action is "available" to the plaintiff, *see Needham*, 459 A.2d at 1063, or a question of whether, as a matter of law, the attorney owed a duty to the plaintiff, *see Hopkins*, 637 A.2d at 428. Resolution of the specific terminology applicable is not required in this opinion.
(continued…)

obligation of the attorney is to his client, and not to a third party . . . .'" *Needham*, 459 A.2d at 1061 (quoting *National Savings Bank v. Ward*, 100 U.S. 195, 200 (1880)). However, "[t]he rule requiring privity is not . . . without exception." *Id.* at 1062. We may allow legal malpractice suits by "third parties notwithstanding a lack of privity where the impact upon the third party is 'not an indirect or collateral consequence,' but the 'end and aim of the transaction.'" *Id.* (quoting *Glanzer v. Shepard*, 135 N.E. 275, 275 (N.Y. 1922) (Cardozo, J.)). Otherwise put, third party claims may be sustained where the plaintiffs were "the direct and intended beneficiaries of the contracted for services." *Id.*

The classic situation that meets these criteria is the failure of an attorney to properly draft a will. Comparing the case before us with that of a negligently omitted beneficiary demonstrates why we must reject Burgin's claim. "'[T]he main purpose of a contract for the drafting of a will is to accomplish the future transfer of the estate of the testator to the beneficiaries named in the will . . . .'" *Needham*, 459 A.2d at 1063 (quoting *Lucas v. Hamm*, 364 P.2d 685, 688 (Cal. 1961)). In such a situation, the duty of care runs to the intended legatee as a

---

(…continued)
No matter how Scott's appellate argument is characterized, as a matter of law, Burgin may not recover from him.

"direct and intended" beneficiary of the attorney-client relationship. *Id.* A properly drafted and executed will provides beneficiaries with legally enforceable rights upon the testator's death. A divorce decree, on the other hand, does not provide the same "direct" benefit to the fiancée of a divorcing client. The divorce does not, of its own force, redistribute the client's assets to the fiancée, nor does it affect a change in the fiancée's legal status. Rather, the "end and aim" of a divorce proceeding is the dissolution of a marriage and the distribution of marital assets. *See generally* D.C. Code §§ 16-910 (assignment of property), -913 (alimony), -914 (custody of children), -920 (a decree of absolute divorce "shall become effective to dissolve the bonds of matrimony 30 days after the docketing of the decree"). The only parties directly concerned with a divorce proceeding are the married couple and their minor offspring. A fiancée of either party is a complete stranger to the transaction, legally speaking, and the divorce itself does nothing to change that status. Rather, the newly divorced person must take at least one further positive and completely distinct step to achieve what Burgin is seeking here and on which she bases her claim of damages; namely, entering into the new marriage itself.[5]

---

[5] In similar cases, courts from other jurisdictions have declined to extend attorneys' liability to third parties like children who are potentially impacted by divorce proceedings. *See In re Estate of Drwenski*, 83 P.3d 457, 465-66 (Wyo.

(continued…)

We further note that permitting malpractice suits in this situation would undermine the "the rationales supporting the requirement of privity" identified in *Needham*, 459 A.2d at 1062. The basic theory pursued by Burgin in this case was that Scott's failure to obtain the divorce prevented her from receiving funds the decedent intended her to have. "With little imagination (and subject only to the demands of ethical pleading)," a similar argument could be advanced by any hypothetical frustrated creditor whose debtor would be enriched but for a bungled divorce. *Hopkins*, 637 A.2d at 430. The fact that only Burgin had such a claim in this case cannot be "the basis" for "a principled exception to the privity requirement." *Id.* at 429. Accordingly, permitting Burgin's suit in this case would frustrate one of the primary goals of the privity rule: "avoiding exposure of the

---

(…continued)
2004) (finding that daughter was not a third-party beneficiary of a contract between attorney and father to pursue divorce despite father's death before the divorce was procured, resulting in father's widow inheriting money the daughter would have inherited had the divorce been finalized); *Pelham v. Griesheimer*, 440 N.E.2d 96, 99-101 (Ill. 1982) (finding that attorney hired to secure divorce owed no duty of care to children of client as third-party beneficiaries, where children claimed that attorney's negligence resulted in children not being able to benefit from divorce decree); *Strait v. Kennedy*, 13 P.3d 671, 676-77 (Wash. App. 2000) (holding that children had no standing as third-party beneficiaries to bring malpractice claim against mother's divorce attorney claiming that attorney failed to timely finalize client's divorce prior to her death, thereby causing children to lose portions of their inheritance); *Wilson-Cunningham v. Meyer*, 820 P.2d 725, 730-31 (Kan. Ct. App. 1991) (holding that attorneys owe no legal duty to divorcing parties' adult children).

attorney 'to a liability in an indeterminate amount . . . to an indeterminate class.'" *Id.* (quoting *Needham*, 459 A.2d at 1062). Extending permission to sue an attorney for malpractice to those who would indirectly benefit from the dissolution of a client's marriage introduces precisely this risk of unforeseen and unmanageable liability.

These concerns also demonstrate why permitting this suit would undermine the other objective of the privity rule: protecting the ability of the attorney and the client to exercise "control over the contractual agreement." *Needham*, 459 A.2d at 1062. "Implicit in the concern underlying the privity concept that attorney and client be able to control . . . their own agreement is an attorney's difficulty in perceiving the consequences of a duty to a third person so that these can be considered and declined if the conflicts or financial exposure is too great." *Hopkins*, 637 A.2d at 429 (internal quotation marks and brackets omitted). In the case of beneficiaries under a will, the aims and purposes of the testator and beneficiaries are identical. In the divorce context, a number of questions and decisions may arise with respect, for example, to the settlement of disputes over property division, the payment of alimony, or other matters relating to the

termination of the marital state.[6] In such a context, it is not difficult to envision situations where the interests of the client seeking the divorce and his fiancée waiting in the wings could come into conflict, which argues against any dilution of the attorney's obligation to serve the interests of his or her client alone.

For all these reasons, we hold that Burgin's suit against Scott must fail. Accordingly, the judgment is

*Reversed.*

---

[6] Indeed, in this very case, rights to the pension with its survivor benefits may very well have been the subject of controversy on which Woodruff might have been persuaded to yield to the disadvantage of Burgin. We do not address on this appeal appellants' challenge to the computation of damages. But we note that the jury awarded damages on the assumption that control over the survivor benefits would remain intact in Woodruff after the divorce proceeding, at best a questionable assumption. Woodruff and his wife were married in 1961 and had four children. *See Barbour v. Barbour*, 464 A.2d 915 (D.C. 1983) (pension benefits are marital property subject to equitable division on divorce).